## IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**WADE Z. WEBB, individually,**

        **Plaintiff,**

**v.**

        Civil Action No. _4:20CV180_
        **TRIAL BY JURY DEMANDED**

**MATHEWS COUNTY SCHOOL BOARD,**
**NANCY WELCH,**
**ALEXIS FOSTER,**
**JULIANNA BERRY,**

        **Defendants.**

## COMPLAINT

## INTRODUCTION

This action arises from an abuse of authority relating to, and the unconstitutional and tortious application of, the Commonwealth of Virginia's threat assessment process, pursuant to Virginia Code § 22.1-79.4. For a period of nearly two months, Defendants in bad faith, without reasonable cause, maliciously pursued a unfair and biased investigation against a minor student, Plaintiff, under the guise of the threat assessment process. At the end of the process, they falsely concluded that Plaintiff was an "imminent threat," and, in so many words, a criminal, and thug. Defendants then placed their false and stigmatizing conclusions in Plaintiff's permanent student record and removed him from his school and peers for a part of his senior school year. The entire process above occurred unbeknownst to and without the involvement of Plaintiff, Plaintiff and his parents

1

W.W. and T.W. Indeed, Defendants did not inform Plaintiff of their investigation, exchange information with Plaintiff, or seek Plaintiff input or evidence. Defendants provided Plaintiff no meaningful or effective notice and opportunity to be heard and no avenue to challenge the above conclusions, either through an impartial name-clearing hearing or an appeal.

In this context, Defendants have violated Plaintiff's constitutional rights and numerous state laws designed to protect him from an abuse of authority. For these violations, Plaintiff allege the following claims: (1) Count I – violations of procedural and substantive due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) Count II –conspiracy to interfere with or violate these rights; (3) Count III – defamation; (4) Count IV – abuse of process; (5) Count V – intentional infliction of emotional distress; and (6) Count VI – gross negligence.

As a result of Defendants' actions, Plaintiff has suffered tremendously and sustained significant economic, emotional, financial, personal, and reputational harm. Plaintiff has been deprived of his right to an education. Thus, Plaintiff requests relief here.

## PARTIES

1. Plaintiff is an individual, and an adult. At all times relevant, he resided in Mathews County, Virginia and was a minor.

2. Defendant Mathews County School Board ("MCSB") is vested with the authority to oversee the Mathews County Public Schools ("MCPS") and its employees.

3. Defendant Nancy Welch ("Welch") was at all times the superintendent and an employee of MCPS and acting under the color of State law. Plaintiff files this action against Welch in her individual and official capacities.

4.    Defendant Alexis Foster ("Foster") was the Principal from 2018- 2020, prior he was the Vice Principal and is an employee of Mathews High School ("MHS"), which is in the MCPS, and acting under the color of State law.  Plaintiff files this action against Foster in his individual and official capacities.

5.    Defendant Julianna Berry ("Berry") was at all times a school resource officer and an employee of the Mathews County Sheriff's Office and acting under the color of State law. Plaintiff files this action against Berry in her individual capacity.

## JURISDICTION AND VENUE

This Court possesses original jurisdiction over Plaintiff claims in Counts I through II below, pursuant to 28 U.S.C. §§ 1331 and 1343, because these claims arise under the Constitution and laws of the United States.

This Court possesses supplemental jurisdiction over the claims in Counts III through VII, pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims alleged above in paragraph 11 that they form part of the same case and controversy.

This Court, namely the Newport News Division of the Eastern District of Virginia, is the proper venue for Plaintiff' Complaint, pursuant to 28 U.S.C. § 1391, because, upon information and belief, Defendants reside or are employed in this Division.  Moreover, their unconstitutional and tortious actions and omissions below occurred within this Division.

## FACTS

### a.        **Plaintiff Prior Enrollment in the MCPS**

6.      Plaintiff is 18 years of age.  Prior to the events giving rise to this Complaint, he had resided in Mathews County his entire life.

7.      Plaintiff is a well-rounded adolescent.  Academically, he performs well.  Socially, Plaintiff has friends, is enthusiastic, kind, soft-spoken, and well-liked, and, prior to the events giving rise to this Complaint, had regularly participated in his community.  Athletically, he excels. Plaintiff played intramural basketball, soccer, lacrosse, and ran cross-country and track in middle school as well high school.

8.      Prior to the events giving rise to this Complaint, Plaintiff was motivated about his future. He aimed to complete high school, attend a four-year college, and get a degree.

9.      From 2006 to 2014, Plaintiff was a student at Ware Academy.  At this private school, he completed first through eighth grades.

10.     At all times during Plaintiff's attendance at Ware Academy, Thomas Thomas was its Headmaster.  Headmaster Thomas handled all student disciplinary matters.

11.     Plaintiff had no disciplinary record at Ware Academy.  Prior to the events giving rise to this Complaint, he had no disciplinary record at any other school.

12.     Plaintiff had also never been charged with and convicted of a crime.

13.     After Plaintiff completed eighth grade at Ware Academy, his parents enrolled him in the MCPS for ninth grade at Mathews High School ("MHS").

14.     Plaintiff attended Mathews High School for four years.

15.     At the time, Defendant Welch was the superintendent of the MCPS.

4

16.    Defendants Foster was principal of MHS.

17.    Defendant Berry was a school resource officer at MHS and an employee with the Mathews County Sheriff's Office.

18.    Through their employment, Defendants Welch, Foster, Berry had been acquainted with each other for years.  Upon information and belief, they knew each other personally and discussed their lives and families.

19.    Mathews County was also a small and closely-knit community.

20.    Defendants Welch, Foster, Berry knew Plaintiff.

21.    This all started at the beginning of the 2019-2020 school year in the first quarter, Plaintiff's senior year.

22.    Plaintiff posted a picture of himself sitting in a car next to his friend with a gun in his lap on the social media app known as Instagram, This Picture was not taken on school grounds or directed towards school in any way.

23.    A day later Plaintiff was at the park and ride "PnR' which is a parking lot and park located next to Mathews High School, Plaintiff was by his vehicle when Deputy Julianna Berry pulled in and proceeded to question and search Plaintiff on his person and his car which he was borrowing at the time. Deputy Julianna Berry also stated that Plaintiff was not allowed on school grounds as he was under investigation.

24.    After multiple phone calls and conversations, a meeting was finally scheduled with the High School; Principal, Alexis Foster, Vice Principal, Lee Anne Bray and Deputy, Julianna Berry, also the Guidance Counselor at the time was present.

**b.      Plaintiff after Enrollment at the MCPS and the Threat Assessment Process**

25. Virginia Code § 22.1-79.4 creates a threat assessment process, which provides:

A. Each local school board shall adopt policies for the establishment of threat assessment teams, including the assessment of and intervention with students whose behavior may pose a threat to the safety of school staff or students . . . .

B.      Each division superintendent shall establish, for each school, a threat assessment team that shall include persons with expertise in counseling, instruction, school administration, and law enforcement . . . .   Each team shall (i) provide guidance to students, faculty, and staff regarding recognition of threatening or aberrant behavior that may represent a threat to the community, school, or self; (ii) identify members of the school community to whom threatening behavior should be reported; and (iii) implement policies adopted by the local school board pursuant to subsection A.

C.      Upon a preliminary determination that a student poses a threat of violence or physical harm to self or others, a threat assessment team shall immediately report its determination to the division superintendent or his designee.   The division superintendent or his designee shall immediately attempt to notify the student's parent or legal guardian.  Nothing in this subsection shall preclude school division personnel from acting immediately to address an imminent threat.

26. The Commonwealth of Virginia Department of Criminal Justice Services' define an "imminent threat" to exist "when the person/situation appears to pose a clear and immediate threat of serious violence toward others that requires containment and action to protect identified or identifiable target(s); and may also exhibit other concerning behavior that require intervention."

27. Pursuant to Virginia Code § 22.1-79.4, Defendant MCSB created a local threat assessment policy, Policy EBB is one page in length and parrots Virginia Code § 22.1-79.4. Policy EBB contains no specific procedure to provide parents and students notice and opportunity to be heard during the threat assessment process or, at the conclusion of the process, to have a hearing and appeal.

28. Policy EBB cross references other MCSB policies relating to, *inter alia*, "Student Conduct" and "Student Suspension/Expulsion." Policy EBB is disciplinary or quasi-disciplinary in nature.

29. What is more, because Policy EBB's deficiencies and application require parents and students to accept the threat assessment team's conclusions without dissent or recourse, the opportunity for an abuse of authority and harm is staggering.

30. Within the second week of the 2019 school year the threat assessment had been enacted and the Plaintiff was told he was not allowed to come back to school for the time being as he was under investigation.

  c.    **The Conclusions from the Threat Assessment Process**

7

31. Plaintiff was never officially suspended or expelled from Mathews High School; he was just "under investigation". Plaintiff never received any charges.

32. Plaintiff never saw risk assessment documentation or signed anything related to.

33. Plaintiff had to pass an evaluation by a therapist before he was allowed to return.

34. School officials were uncoordinated and very lacking with the help of getting Plaintiff's schoolwork or trying to help him stay caught up.

35. The School principal stated many times that the schoolwork missed would be ready to collect by his parents in the school office, Plaintiff's mother tried multiple times but there never was any work to be collected in the office when she went.

36. Ultimately it took Plaintiff the first school year quarter which almost totaled 2 months to get admitted back into school so he could finish out his senior year.


**d.          The Aftermath from the Threat Assessment Process**


37. As a result of the threat assessment process, Plaintiff have suffered tremendously and sustained significant economic, emotional, financial, personal, and reputational harm.

38. Plaintiff has suffered and continues to suffer extreme anxiety, bouts of depression, despair, disruption, fear, insomnia, isolation, ostracism, nightmares, pain, stress, and uncertainty. He has required psychotherapy. Plaintiff has been demonized, stigmatized, and branded a criminal and thug in need of psychological intervention and, in so many words, quarantine. Defendants have ruined his reputation and future.

39. W.W. and T.W. have suffered in the same way. What is more, as parents, they

have suffered and continued to suffer their child's suffering.

40. Plaintiff's psychotherapist opined as to his clinical impressions of Plaintiff. She opined, Plaintiff "is a likeable, polite, respectful, normal high school kid, who doesn't pose an 'imminent threat' to anyone."

## COUNT I Violation of Procedural and Substantive Due Process Rights Fourteenth Amendment to the United States Constitution (Plaintiff v. All Defendants)

39. Plaintiff incorporates and re-assert fully herein the allegations of paragraphs 1 through 97, *supra.*

40. The Fourteenth Amendment to the United States Constitution mandates that no State shall "deprive any person of life, liberty, or property, without due process of law."

41. Furthermore, 42 U.S.C. § 1983 provides: Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42. The MCSB oversees the MCPS, is a municipality, and is a person under 42 U.S.C.   § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Consequently, it is subject to mandates of the Fourteenth Amendment.

43. Defendants Welch and Foster were public employees of the MCPS and, in the course and scope of their employment, acted under the color of State law in their respective official and individual capacities.

44. Defendant Berry was an employee of the Mathews County Sheriff's Office and, in the course and scope of her employment, was acting under the color of State law and in her individual capacity.

45. Defendant Welch, Foster, and Berry are persons, pursuant to 42 U.S.C. § 1983, and subject to the mandates of the Fourteenth Amendment.

46. Plaintiff is a citizen of the United States.

<u>Deprivation of a Property Interest</u>

47. Plaintiff has a protected property interest in Plaintiff's education.

48. Defendants could not deprive them of this interest without due process of law.

49. At law, Plaintiff is entitled to complete, meaningful, and effective notice and opportunity to be heard prior to any deprivation of the above protected property interest.

50. Plaintiff is also entitled to an impartial decision-maker.

51. Notwithstanding, Defendants deprived Plaintiff of their protected property interest in violation of the Due Process Clause of the Fourteenth Amendment. They did so under the guise of the MCPS's disciplinary threat assessment process without affording even basic due process.

52. Defendants removed Plaintiff from MCPS with no means of completing his schoolwork, instruction indefinitely and for no less than 2 months. In conjunction with demonizing

Plaintiff as an "imminent threat," a criminal and a thug, Defendants said they would have his school work ready for pick up, work was never collected and was not left available for pick up like they stated even after multiple phone calls.

53. In so removing Plaintiff, Defendants provided Plaintiff no complete, impartial, meaningful, and effective notice and opportunity to be heard.

54. In so removing Plaintiff, Defendants provided Plaintiff no hearing and appeal. Plaintiff had no opportunity to exchange information, present their side of the story, offer input, and provide contextual and exculpatory evidence.

55. Rather, biased against Plaintiff, Defendants pursued a covert, deficient, and one-sided sham of a threat assessment process, arrived at conclusions demonizing and stigmatizing Plaintiff, and demanded Plaintiff accept them without challenge, dissent, or recourse.

56. Defendants deprived Plaintiff of their protected property interest deliberately, intentionally, and/or in reckless disregard of Plaintiff's due process rights.

57. The Defendant MCSB did so directly through official Policy EBB, which is constitutionally deficient and enabled and fueled Defendants' personal pursuit against Plaintiff.

<u>Deprivation of Liberty Interests</u>

58. Plaintiff also has protected liberty interests in his good name, reputation, honor, and integrity and in the freedom to engage in educational and employment opportunities.

59. Defendants cannot deprive them of these interests without due process of law. At law, Plaintiff are entitled to complete, meaningful, and effective notice and opportunity to be heard prior to such a deprivation.

60. Plaintiff is also entitled to a name-clearing hearing and appeal.

61. Plaintiff is also entitled to an impartial decision-maker.

62. Notwithstanding, Defendants deprived the Plaintiff of his protected liberty interests in violation of the Due Process Clause to the Fourteenth Amendment. They did so under the guise of the MCPS's disciplinary threat assessment process and without affording Plaintiff even the most basic due process.

## Substantive Due Process Violation

63. The Fourteenth Amendment also prohibits the arbitrary, capricious, and conscience-shocking deprivation of property and liberty interests.

64. As alleged above, Plaintiff possessed protected property and liberty interests, and Defendants deprived them of those interests.

65. Defendants' acts and omissions in so doing were arbitrary, capricious, shocking, and unfair.

66. Defendants' acts and omissions were in bad faith, with impermissible objectives, and with a predetermined outcome.

67. Defendants substantially departed from any accepted constitutional and disciplinary norm and, biased, failed to reach reasoned and warranted judgments.

68. As alleged above, Defendants did so without providing Plaintiff even the most basic due process and caused a permanent stain on Plaintiff and his reputation and future.

69. As a direct and proximate result of Defendants' "Deprivation of Property Interest,"

12

"Deprivation of Liberty Interests," and "Substantive Due Process Violation" in ¶¶ 98-140, Plaintiff have suffered tremendously and have sustained significant emotional, financial, personal, and reputational harm. This harm includes anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion, fear, harassment, humiliation, isolation, ostracism, pain and suffering, shame, and stigma. Additionally, Plaintiff has lost the freedom to pursue educational and occupational paths, which have now been foreclosed.

70. Plaintiff, therefore, request this Court grant them the relief requested, *infra*, in the paragraph captioned "Prayer for Relief" at the end of this Complaint.

## COUNT II Conspiracy to Interfere with Civil Rights, 42 U.S.C. §§ 1983 and 1985 (Plaintiff v. All Individual Defendants)

71. Plaintiff incorporates and re-assert fully herein the allegations of paragraphs 1 through 142, *supra*.

72. Defendants engaged in a conspiracy to interfere with or violate Plaintiff's civil rights, pursuant to 42 U.S.C. §§ 1983 and 1985.

73. Specifically, Defendants combined and came to an agreement and meeting of the minds to remove Plaintiff from the MCPS and, ultimately, destroy his education and future. In the course of their threat assessment process, Defendants engaged in the specific overt acts, conduct, communications, meetings, statements, and transactions as alleged above.

74. An objective of Defendants' conspiracy was to deprive Plaintiff of their protected property and liberty interests in violation of the Due Process Clause to the Fourteenth Amendment.

147. Defendants' biased and specific overt acts, conduct, communications, meetings, statements, and transactions above included a covert, manufactured, and sham threat assessment process, removal and ostracization of Plaintiff, refusal to afford even the most basic due process, the meritless institution of juvenile, social services, and criminal proceedings, the placement of demonizing and stigmatizing conclusions in Plaintiff's student record, and a disclosure of such conclusions to a member of the public.

75. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered tremendously and sustained significant emotional, financial, personal, and reputational harm. This harm includes but is not limited to anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion, fear, harassment, humiliation, isolation, ostracism, pain and suffering, shame, and stigma. Additionally, Plaintiff has lost the freedom to pursue educational and occupational paths, which Defendants have now foreclosed.

76. Plaintiff, therefore, request this Court grant them the relief requested, *infra*, in the paragraph captioned "Prayer for Relief" at the end of this Complaint.

**COUNT III Abuse of Process, Virginia Law (Plaintiff Plaintiff v. Defendant Foster)**

77. Plaintiff incorporates and re-assert fully herein the allegations of paragraphs 1 through 170, *supra.*

78. Plaintiff was not aloud on school grounds, had to get evaluated by a therapist, was denied an education, and was seemingly forgotten about and pushed away the longer he was out of school.

14

79. As a direct and proximate result of this abuse of process, Plaintiff has sustained significant emotional, financial, personal, and reputational harm. This harm includes anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion, fer, harassment, humiliation, isolation, ostracism, pain and suffering, shame, and stigma. Plaintiff has also suffered financial losses, including the costs of having to hire an attorney to defend him in the prosecutions.

80. 176. Plaintiff, therefore, requests this Court grant him the relief requested, *infra*, in the paragraph captioned "Prayer for Relief" at the end of this Complaint.

## COUNT VI Intentional Infliction of Emotional Distress (Plaintiff v. All Individual Defendants)

81. Plaintiff incorporates and re-assert fully herein the allegations of paragraphs 1 through 176, *supra*.

82. Defendants' conduct alleged herein was intentional or reckless, such that they knew or should have known it would cause Plaintiff severe emotional distress.

83. Defendants' conduct above was performed for the purposes of removing Plaintiff from the MCPS, and causing him humiliation, ridicule, and severe distress. Defendants, who resorted to a covert, manufactured, and sham threat assessment process, wanted to harass and harm Plaintiff.

15

84. Further, Defendants' institution of meritless juvenile, social services, and criminal proceedings, placement of demonizing and stigmatizing conclusions in Plaintiff's student record, denial of even the most basic due process rights, and public disclosure of conclusions were intended to cause severe emotional distress to Plaintiff in their small community. 181. Defendants' acts and omissions with respect to a child and his parents were so outrageous and extreme, prolonged, and vindictive in character and nature that they went beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in a civilized community.

85. In fact, Defendants' acts and omissions were an abuse of their authority.

86. And Foster personally intended to inflict punishment on Plaintiff.

87. Defendants' conduct directly and proximately caused Plaintiff emotional distress. 185. Plaintiff resulting distress was so severe that no reasonable person could be expected to endure it. Plaintiff's distress includes significant emotional, financial, personal, and reputational harm. This harm includes anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion, fear, harassment, humiliation, isolation, mood swings, ostracism, pain and suffering, shame, and stigma. Additionally, Plaintiff has lost the freedom to pursue educational and occupational paths, which Defendants have now foreclosed.

88. Plaintiff, therefore, request this Court grant him the relief requested, *infra,* in the paragraph captioned "Prayer for Relief" at the end of this Complaint.

**Count VII Gross Negligence, Virginia Law (Plaintiff vs. All Individual Defendants)**

89. Plaintiff incorporates and re-assert fully herein the allegations of paragraphs 1 through 186, *supra*.

90. Defendants owed a duty to exercise reasonable care toward Plaintiff and their wellbeing in the course and scope of their threat assessment process.

91. Notwithstanding, Defendants breached that duty.

92. Defendants breached their duty by deliberately, recklessly, wantonly, and wrongfully pursuing a faulty and inadequate threat assessment process, disregarding and failing to investigate contextual and exculpatory information, which they knew or should have known existed, and excluding Plaintiff from the process before finalizing the same. Defendants had four months to investigate the matter, demonstrating no immediacy existed to warrant Plaintiff's exclusion from the process or even to label Plaintiff as an "imminent threat" to anyone.

93. In doing so, Defendants acts, and omissions demonstrated an absence of slight diligence and the want of even scant care toward Plaintiffs, and their acts and omissions shock the conscience of a fair-minded person.

94. In doing so, Defendants acted under a heedless and palpable violation of legal duty respecting the Plaintiff's rights, including under the Fourteenth Amendment.

95. As a direct and proximate cause of Defendants' gross negligence, Plaintiff has suffered significant emotional, financial, personal, and reputational harm. This harm includes anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion, fear,

17

harassment, humiliation, isolation, ostracism, pain and suffering, shame, and stigma. Also, Plaintiff lost the freedom to pursue educational and occupational paths, which Defendants have foreclosed.

96. Plaintiff, therefore, requests this Court grant them the relief requested, *infra*, in the paragraph captioned "Prayer for Relief" at the end of this Complaint.

### Prayer for Relief

Wherefore, Plaintiff requests the following relief against Defendants, jointly and severally:

(a)     Compensatory damages;

(b)     Punitive damages, to the maximum amount possible under law in light of the egregious, wanton, reckless, and conscious disregard for Plaintiffs' rights and wellbeing, requiring punishment and deterrence;

(c)     Injunctive relief, including the enjoining of the threat assessment process, reinstatement, expungement of student records, and an apology;

(d)     Declaratory relief, including that Defendants' violated Plaintiffs' rights herein;

(e)     Attorney's fees and costs associated with this action;

(f)     Any such other and further relief as the Court may deem just and proper.

### JURY DEMAND AND AMENDMENT

Plaintiff hereby demands a trial by jury on all issues so triable and reserve the right to amend the facts and claims as future discovery permits.

Respectfully Submitted,

**WADE Z. WEBB,**

### Certificate of Service

I hereby certify that a copy of the foregoing complaint was Mailed to
Mathews High School at 9889 Buckley Hall Rd, Mathews, VA 23109 on the
30th day of November, 2020.

Wade Z. Webb

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Newport News **DIVISION**

_____Wade Z. Webb_____
Plaintiff(s),

Mathews County School Board
Nancy Welch
Alexis Foster
Julianna Berry          Defendant(s).

Civil Action Number: _4:20CV180_

# LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _____Complaint_____.
**(Title of Document)**

_____Wade Z. Webb_____
Name of *Pro Se* Party (Print or Type)

_____Wadlee_____
Signature of *Pro Se* Party

Executed on: __11/30/2020__ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
**(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)



# INFORMATION FORM

## NOTICE:
(03/27/20)

➤ In conjunction with General Order 2020-08 re: COVID-19, the Clerk's office counters are closed to the public until further notice to minimize personal interactions.

➤ The public may use the drop box during hours when the court is closed but the buildings are open to the public.

➤ Clerk's Office staff retrieve documents from the drop boxes at 9:00 a.m. each day that the court is open.

Date: __11/30/2020__

Case Name (if applicable): _____

Case Number(s) (if applicable): _____

Company/Firm: _____

Name/Contact: __Wade Webb__

Address: __P.O. Box 597__

City, State, Zip: __North, VA, 23128__

Phone: __804-695-6034__

Email Address: __wadewebb.melissadjohnsonplld@gmail.com__

CHECK/MONEY ORDER ENCLOSED Yes _✓_ No ____ **(CASH NOT ACCEPTED)**

➤ **IMPORTANT** - Before placing your filing in the drop box, please ensure the following:
   ✓ Case number and caption clearly identified on document(s).
   ✓ Documents have been signed.
   ✓ If documents are being filed by pro se litigant, please complete and sign the form titled: Local Rule 83.1(M) Certification and submit with your document(s).

➤ **QUESTIONS? Please use provided drop box telephone to call**
   ✓ Richmond – **804-916-2220**
   ✓ Alexandria – **703-299-2100**
   ✓ Norfolk/Newport News - **757-222-7201**